**FILED**

JUN 0 6 2011

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
CAPE GIRARDEAU

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ARCH COAL, INC.,<br>K&M INVESTORS, INC.,<br>MOMENTIVE SPECIALTY CHEMICALS,<br>INC., and SWEPI LP,<br><br>Defendants. | Civil Action No. 1:11-cv-55 |

**CONSENT DECREE**

# I. BACKGROUND

A. The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9607, as amended ("CERCLA"), seeking reimbursement of response costs incurred or to be incurred for response actions taken or to be taken at or in connection with the release or threatened release of hazardous substances at the Missouri Electric Works Superfund Site in Cape Girardeau, Missouri (the "Site").

B. As a result of the release or threatened release of hazardous substances, EPA has undertaken response actions at or in connection with the Site under Section 104 of CERCLA, 42 U.S.C. § 9604, and will undertake response actions in the future. In performing these response actions, EPA has incurred and will continue to incur response costs at or in connection with the Site.

C. Site inspections and investigations were first conducted by EPA in the mid-1980s to characterize the extent of polychlorinated biphenyl ("PCB") contamination both within and outside the Missouri Electric Works ("MEW") property boundary. Pursuant to an Administrative Order on Consent ("AOC") entered into with EPA in December 1988, a group of MEW customers completed a Remedial Investigation and Feasibility Study ("RI/FS") in July 1990.

D. EPA issued a Record of Decision ("ROD") in September 1990, calling for the incineration of PCB-contaminated soil. This soil remedy was modified in February 1995 by an explanation of significant differences issued by EPA to broaden the technologies acceptable to EPA for the treatment of Site soils. In June of 1992 a Consent Decree ("CD") entered into by the U.S., the state of Missouri, and 179 settling defendants was lodged with the U.S. District Court, Eastern District of Missouri. The settling defendants to that CD agreed to conduct a remedial design/remedial action ("RD/RA") to address soils contaminated with PCBs and a groundwater design investigation to characterize the rate and extent of contamination in the groundwater at the Site. That CD became effective in March 1998.

E. The soil remedial action required by the CD began in June 1999. This action involved the excavation and treatment of contaminated soil using thermal desorption technology. The soil remediation at the Site was completed in July 2000. The groundwater design investigation was completed at the Site in 2005. On September 28, 2005, EPA issued a ROD which presented EPA's selection of a groundwater remedy. There are two areas of groundwater contamination at the Site; in the upland fractured bedrock and in a downgradient alluvial aquifer. For the fractured bedrock aquifer EPA selected a remedy consisting of a technical impracticability waiver, institutional controls ("ICs"), wellhead treatment, and long-term monitoring. For the alluvial aquifer, EPA selected an enhanced biodegradation remedy, with a monitored natural attenuation contingent remedy. This remedy includes ICs, wellhead treatment, the injection of biological agents into the aquifer to facilitate contaminant breakdown, and long-term monitoring.

F.  The CD contained a Cost Allocation Formula ("CAF") (Appendix K of the CD) pursuant to which the estimated costs of performing the work required by the CD were allocated among the Settling Defendants to the CD on the basis of a formula resulting in the assignment of "Responsibility Units" or "RUs." The CAF and the RU methodology were considered by the parties to the CD to be a fair and equitable allocation of those costs and it has been applied in subsequent court-approved settlements involving the Site. The CAF and the RU methodology were applied in this matter to determine the amount of response costs to be paid by the Settling Defendant in Section VI (Payment of Response Costs) below.

G.  EPA has determined the following:

(1)  prompt settlement with Settling Defendant is practicable and in the public interest within the meaning of Section 122(g)(1) of CERCLA, 42 U.S.C. § 9622(g)(1);

(2)  the payment to be made by Settling Defendant under this Consent Decree involves only a minor portion of the response costs at the Site within the meaning of Section 122(g)(1) of CERCLA, 42 U.S.C. § 9622(g)(1), based upon EPA's estimate that the total response costs incurred and to be incurred at or in connection with the Site by the EPA Hazardous Substance Superfund and by other persons is ranges from approximately $7,000,000 to $16,000,000; and

(3)  the amount of hazardous substances contributed to the Site by Settling Defendant and the toxic or other hazardous effects of the hazardous substances contributed to the Site by Settling Defendant are minimal in comparison to other hazardous substances at the Site within the meaning of Section 122(g)(1)(A) of CERCLA, 42 U.S.C. § 9622(g)(1)(A). This is because the amount of hazardous substances contributed to the Site by Settling Defendant does not exceed four tenths of one percent (0.4 %), by RU, of the hazardous substances at the Site and the hazardous substances contributed by Settling Defendant to the Site are not significantly more toxic or of significantly greater hazardous effect than other hazardous substances at the Site.

H.  The defendant that has entered into this Consent Decree ("Settling Defendant") does not admit any liability to Plaintiff or any third-party arising out of the transactions or occurrences alleged in the complaint.

I.  The United States and Settling Defendant agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Consent Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607 and 9613(b) and also has personal jurisdiction over Settling Defendant. Settling Defendant consents to and shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.    PARTIES BOUND

2.    This Consent Decree is binding upon the United States, and upon Settling Defendant and its successors and assigns. Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendant under this Consent Decree.

## IV.    DEFINITIONS

3.    Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever the terms listed below are used in this Consent Decree the following definitions shall apply:

   a.    "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq*.

   b.    "Consent Decree" shall mean this Consent Decree.

   c.    "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

   d.    "DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

   e.    "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

   f.    "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

   g.    "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of

interest is subject to change on October 1 of each year.

      h.    "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

      i.    "Parties" shall mean the United States and Settling Defendant.

      j.    "Plaintiff" shall mean the United States.

      k.    "RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. § 6901, *et seq.*, as amended and commonly referred to as the "Resource Conservation and Recovery Act."

      l.    "Response Costs" shall mean all costs of "response" as that term is defined by Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

      m.    "Responsibility Unit" or "RU" shall mean the level of responsibility allocated pursuant to the cost allocation formula set forth in Appendix K of the Consent Decree entered in *United States v. Union Electric Co., et al.*, No. 1:92cv00078 and 1:92cv00088 (E.D. Mo. 1992).

      n.    "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

      o.    "Settling Defendant" shall mean K&M Investors, Inc., a Missouri corporation.

      p.    "Site" shall mean the Missouri Electric Works Inc. property, encompassing approximately 6.4 acres located at 824 South Kingshighway in Cape Girardeau, Missouri, and shall include all areas to which Waste Material released from the MEW property has migrated or come to be located.

      q.    "State" shall mean the State of Missouri.

      r.    "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

      s.    "Waste Material" shall mean: (i) any "hazardous substance" as defined by Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any "pollutant" or "contaminant" as defined by Section 101(33) of CERCLA, 42 U.S.C. § 9601(33), and (3) any "solid waste" as defined by Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

4. By entering into this Consent Decree, the mutual objectives of the Parties are:

    a. to reach a final settlement among the Parties with respect to the Site pursuant to Section 122(g) of CERCLA, 42 U.S.C. § 9622(g), that allows Settling Defendant to make a cash payment to resolve its alleged civil liability under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, for injunctive relief with regard to the Site and for Response Costs incurred and to be incurred at or in connection with the Site, thereby reducing litigation relating to the Site;

    b. to simplify any remaining administrative and judicial enforcement activities concerning the Site by eliminating a potentially responsible party from further involvement at the Site; and

    c. to obtain settlement with Settling Defendant for its fair share of response costs incurred and to be incurred at or in connection with the Site by the EPA Hazardous Substance Superfund, and by other persons, and to provide for full and complete contribution protection for Settling Defendant with regard to the Site pursuant to Sections 113(f)(2) and 122(g)(5) of CERCLA, 42 U.S.C. §§ 9613(f)(2) and 9622(g)(5).

## VI.  **PAYMENT OF RESPONSE COSTS**

5. Within thirty (30) days of entry of this Consent Decree, Settling Defendant shall pay to EPA $89,569.12.

6. Settling Defendant's payment includes an amount for: (a) past response costs incurred at or in connection with the Site; (b) projected future response costs to be incurred at or in connection with the Site; and (c) a premium to cover the risks and uncertainties associated with this settlement, including but not limited to, the risk that total response costs incurred or to be incurred at or in connection with the Site by the EPA Hazardous Substance Superfund, or by any other person, will exceed the estimated total response costs upon which Settling Defendant's payments is based.

7. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to Department of Justice's ("DOJ") account in accordance with current EFT procedures, referencing USAO File Number 2011V00210, the EPA Region and Site Spill ID Number 076R, and DOJ Case Number 90-11-2-614/3. Payment shall be made in accordance with instructions provided in writing to Settling Defendant by the Financial Litigation Unit of the U.S. Attorney's Office in the Eastern District of Missouri following lodging of this Consent Decree. Any payments received by the DOJ after 4:00 p.m. Eastern Time shall be credited on the next business day.

8.  At the time of payment, Settling Defendant shall send notice that its payment has been made to EPA and DOJ in accordance with Section XIV (Notices and Submissions) and to EPA's Regional Financial Management Officer, Mail Code PLMG/RFMB/FMSS, EPA Region 7, 901 North 5th Street, Kansas City, Kansas 66101.

9.  All amounts paid by Settling Defendant pursuant to this Section shall be deposited by EPA in the Missouri Electric Works Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

## VII. **FAILURE TO COMPLY WITH CONSENT DECREE**

10.  <u>Interest on Late Payments</u>. If Settling Defendant fails to make any payment required of it under Paragraph 5, above, by the required due date, Interest shall continue to accrue on such unpaid balance through the date of payment.

11.  <u>Stipulated Penalty</u>.

   a.  If any amount(s) due under Paragraph 5, above, are not paid within seven (7) days of the required due date, Settling Defendant shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the interest required by Paragraph 10, above, $850 per day for each day that such payment is late.

   b.  Stipulated penalties are due and payable within thirty (30) days of the date that demand for payment of the stipulated penalties has been presented to Settling Defendant. All payments to EPA under this paragraph shall be identified as "stipulated penalties" and shall be transmitted by wire transfer directed to SWIFT address FRNYUS33, Federal Reserve Bank of New York, ABA 021030004, Account 68010727, 33 Liberty Street, New York, New York 10045. Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental Protection Agency." Each such transmittal shall reference the name and address of Settling Defendant, the Site name "Missouri Electric Works," the EPA Site Spill ID Number 076R, and the DOJ Case Number 90-11-2-614/2.

   c.  At the time of payment, Settling Defendant making such payment shall send notice that payment has been made to EPA and DOJ in accordance with Section XIV (Notices and Submissions) and to the EPA Regional Financial Management Officer, Mail Code PLMG/RFMB/FMSS, EPA Region 7, 901 North 5th Street, Kansas City, Kansas 66101.

   d.  Penalties shall accrue as provided in this paragraph regardless of whether EPA has notified Settling Defendant of the violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

12.    If the United States brings an action to enforce this Consent Decree, Settling Defendant shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

13.    Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

14.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse Settling Defendant from payment as required by Section VI or from performance of any other requirements of this Consent Decree.

### VIII.    CERTIFICATION OF SETTLING DEFENDANT

15.    By signing this Consent Decree, Settling Defendant certifies that, to the best of its knowledge and belief, it:

   a.    has conducted a thorough, comprehensive, good faith search for documents, and has fully and accurately disclosed to EPA and/or DOJ, all information currently in its possession, or in the possession of its officers, directors, employees, contractors or agents, which relates in any way to the ownership, operation, or control of the Site, or to the ownership, possession, generation, treatment, transportation, storage or disposal of a hazardous substance, pollutant, or contaminant at or in connection with the Site;

   b.    except for identical copies of such records, documents, or other information, has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents, or other information relating to its potential liability regarding the Site after notification of potential liability or the filing of a suit against it regarding the Site; and

   c.    has and will comply fully with any and all EPA requests for information regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e).

### IX.    COVENANT NOT TO SUE BY UNITED STATES

16.    In consideration of the payments that will be made by Settling Defendant pursuant to this Consent Decree, and except as specifically provided in Section X (Reservation of Rights by United States), the United States covenants not to sue or to take administrative action against each Settling Defendant pursuant to Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, with regard to the Site. With respect to present and future liability, this covenant not to sue shall take effect upon receipt by the United States of all payments required to be made by Settling Defendant by Section VI (Payment of Response Costs) and any amount due under Section VII

(Failure to Comply with Consent Decree). This covenant not to sue is conditioned upon: (a) the satisfactory performance by Settling Defendant of all of its obligations under this Consent Decree; and (b) the veracity of the information provided to EPA and DOJ by Settling Defendants relating to its involvement with the Site. This covenant not to sue extends only to Settling Defendant and does not extend to any other person.

## X. RESERVATION OF RIGHTS BY UNITED STATES

17. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the Covenant Not to Sue by United States in Paragraph 16. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

    a. liability for failure of a Settling Defendant to meet a requirement of this Consent Decree;

    b. criminal liability;

    c. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

    d. liability, based upon Settling Defendant's ownership or operation of the Site, or upon Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal, of a hazardous substance or a solid waste at or in connection with the Site, after signature of this Consent Decree by Settling Defendant; and

    e. liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site.

18. Notwithstanding any other provision in this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings against Settling Defendant in this action or in a new action or to issue an administrative order to Settling Defendant seeking to compel Settling Defendant to perform response actions relating to the Site, and/or to reimburse the United States for additional costs of response, if information is discovered which indicates that Settling Defendant contributed hazardous substances to the Site in such greater amount or of such greater toxic or other hazardous effects that Settling Defendant no longer qualifies as a de minimis party at the Site because Settling Defendant contributed greater than four tenths of one percent (0.4%), by RU, of the hazardous substances at the Site, or contributed hazardous substances which are significantly more toxic or are of significantly greater hazardous effect than other hazardous substances at the Site.

- 8 -

## XI.    COVENANT NOT TO SUE BY SETTLING DEFENDANT

19.    Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States, or its contractors or employees, with respect to the Site or this Consent Decree, including but not limited to:

a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b.    any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; and

c.    any claim against the United States pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, relating to the Site.

Except as provided in Paragraph 21 (Waiver of Claims) and Paragraph 25 (Waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraph 17 (c) - (e) or Paragraph 18, but only to the extent that Settling Defendant's claims arise from the same response action or response costs that the United States is seeking pursuant to the applicable reservation.

20.    Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

21.    Settling Defendant agrees not to assert any claims or causes of action (including claims for contribution under CERCLA) that it may have for all matters relating to the Site against any other person who is a potentially responsible party under CERCLA at the Site. This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person if such person asserts or has asserted a claim or cause of action relating to the Site against Settling Defendant.

## XII.    EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

22.    Except as provided in Paragraph 21 (Waiver of Claims), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law. Except as provided in Paragraph 21 (Waiver of Claims), the Parties expressly reserve any and all

- 9 -

rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which they may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

23. The Parties agree, and by entering this Consent Decree this Court finds, that Settling Defendant is entitled, as of the date of entry of this Consent Decree, to protection from contribution actions or claims as provided by Sections 113(f)(2) and 122(g)(5) of CERCLA, 42 U.S.C. §§ 9613(f)(2) and 9622(g)(5), for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person. The "matters addressed" in this Consent Decree do not include those response costs or response actions as to which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that the United States asserts rights against Settling Defendant coming within the scope of such reservations.

24. Settling Defendant agrees that, with respect to any suit or claim for contribution brought by it for matters related to this Consent Decree, Settling Defendant shall notify EPA and DOJ in writing no later than sixty (60) days prior to the initiation of such suit or claim. Settling Defendant also agrees that, with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, Settling Defendant will notify EPA and DOJ in writing within ten (10) days of service of the complaint or claim upon it. In addition, Settling Defendant shall notify EPA and DOJ within ten (10) days of service or receipt of any Motion for Summary Judgment, and within ten (10) days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

25. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this paragraph affects the enforceability of the Covenant Not to Sue by United States set forth in Section IX.

### XIII. **RETENTION OF RECORDS**

26. Until five years after the entry of this Consent Decree, Settling Defendant shall preserve and retain all non-identical copies of records now in its possession or control, or which come into its possession or control, that relate in any manner to response actions taken at the Site or the liability of any person under CERCLA with respect to the Site, regardless of any corporate retention policy to the contrary.

- 10 -

27. After the conclusion of the document retention period in the preceding paragraph, Settling Defendant shall notify EPA and DOJ at least ninety (90) days prior to the destruction of any such records, and, upon request by EPA or DOJ, Settling Defendant shall deliver any such records to EPA. Settling Defendant may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege, it shall provide Plaintiff with the following: (a) the title of the record; (b) the date of the record; (c) the name and title of the author of the record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the record; and (f) the privilege asserted. However, no records created or generated pursuant to the requirements of this or any other settlement with the United States shall be withheld on the grounds that they are privileged.

### XIV. **NOTICES AND SUBMISSIONS**

28. Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, DOJ, and Settling Defendant, respectively.

As to the United States:

As to DOJ:

>Chief, Environmental Enforcement Section
>Environment and Natural Resources Division
>U.S. Department of Justice (DJ # 90-11-2-614/2)
>P.O. Box 7611
>Washington, D.C. 20044-7611

As to EPA:

>Superfund Division Director
>U.S. Environmental Protection Agency, Region 7
>901 North 5th Street
>Kansas City, Kansas 66101

As to Settling Defendant:

>Dale E. Hermeling, Esq.
>The Stolar Partnership LLP
>911 Washington Avenue
>St. Louis, Missouri 63101.

## XV. RETENTION OF JURISDICTION

29. This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVI. INTEGRATION

30. This Consent Decree constitutes the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XVII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

31. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice, and the United States reserves the right to oppose an attempt by any person to intervene in this civil action.

32. If for any reason this Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XVIII. EFFECTIVE DATE

33. The effective date of this Consent Decree shall be the date of entry by this Court, following public comment pursuant to Paragraph 31.

## XIX. SIGNATORIES/SERVICE

34. Settling Defendant's undersigned representative to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of DOJ, or his delegate, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

35. Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

36. Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.

## XX. FINAL JUDGMENT

37. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States and Settling Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 6th DAY OF June, 2011.

_____
United States District Judge

- 13 -

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. K&M Investors, Inc.* relating to the Missouri Electric Works Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

Date: 4/7/11

ELLEN MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Date: 4/7/11

LOREN REMSBERG
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-3143
Fax: (202) 514-4180
Email: loren.remsberg@usdoj.gov

RICHARD G. CALLAHAN
United States Attorney
Eastern District of Missouri


SUZANNE MOORE
Assistant United States Attorney
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102
Telephone: (314) 539-2200


Date: 1/7/11

_____
CECILIA TAPIA
Director, Superfund Division
U.S. Environmental Protection Agency, Region 7
901 North 5th Street
Kansas City, Kansas 66101


Date: 12/21/10

_____
DAVID A. HOEFER
Attorney-Adviser
U.S. Environmental Protection Agency, Region 7
901 North 5th Street
Kansas City, Kansas 66101


- 15 -

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. K&M Investors, Inc.* relating to the Missouri Electric Works Superfund Site.

**FOR DEFENDANT K&M INVESTORS, INC.**

Date: 11·11·2010

*TKC*
Representative's Signature

Thom Kuhn
Representative's Name

President
Representative's Title

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Dale E. Hermeling
Agent's Name

Counsel for Defendant K&M Investors, Inc.
Agent's Title

911 Washington Ave., 7th Fl.

St. Louis, Missouri 63101
Agent's Address